PAUL KEITH V. THE STATE.

No. 8747.   Delivered Oct. 7, 1925.

Rehearing denied April 14, 1926.

**1.—Accomplice to Murder—Evidence—Properly Admitted.**

Where, on a trial for being an accomplice to murder, there was no error in permitting the father of the deceased to testify to a conversation which he had with appellant about three weeks prior to the time that his son was killed, said conversation being of a material character in the development of the state's case.

**2.—Same—Evidence—Of Convicted Felon—When Incompetent.**

A witness is not disqualified by reason of his conviction of a felony, until sentence has been pronounced upon him, and until it has become final by acceptance or by affirmance on appeal.  The witness Burl Kemp, who had been convicted as a principal of the murder, for which appellant was being tried as an accomplice, but sentence not having been passed upon him, at the time of this trial, he was a competent witness.  See Sec. 17 Branch's P. C. for collation of authorities.

**3.—Same—Evidence Properly Admitted.**

On a trial of an accused, who is charged with being an accomplice to murder, it being necessary for the state to first establish the murder, as alleged in the indictment, evidence of a material character which tends to establish this fact, is properly admitted, and there was no error in permitting witnesses Burl Kemp and Latson to testify to facts and circumstances showing that deceased was killed by Clem Gray, the indictment alleging that appellant was an accomplice of said Clem Gray.

4.—Same—Evidence—Properly Admitted.

There was no error in permitting the witnesses Smith and Black to testify that they examined the ground where the deceased was killed, and what they found on such examination. It being competent and proper for the state to prove the death of the deceased, and to introduce any pertinent circumstance showing the manner in which he was killed, this testimony had a very strong tendency to serve this purpose, and was properly admitted.

4.—Same—Confession of Accused—When State Introduces a Part—All Is Admissible.

Where the state introduced that part of a confession made by appellant, of an incriminating character, the appellant had the right to offer the balance of the statement, and having availed himself of this right by introducing the remainder of the confession, no error is manifested by his bill.

5.—Same—Statement of Accused—Properly Admitted.

Where the state introduced a statement of the accused, signed and sworn to before a justice of the peace, and this statement is objected to on the ground that appellant was under arrest at the time it was made, the sheriff having testified positively and unequivocally that appellant was not under arrest at the time the statement was made, there is no error shown in its admission.

6.—Same—Evidence Corroboration of Accomplice—Properly Admissible.

There was no error in permitting several witnesses to testify as to the finding of the clothing of deceased weighted down with rocks in a creek and other cogent facts and circumstances which were corroborative of the accomplice witness Burl Kemp in establishing the fact that Clem Gray killed the deceased.

7.—Same—Evidence—Showing Motive—Properly Admitted.

In establishing that Clem Gray killed the deceased, his motive for doing so became a material inquiry and upon this issue there was no error in permitting the state to prove that appellant, Clem Gray, and the deceased were jointly indicted for burglary, and that the deceased's father had told Gray that the deceased would have to stay, and take the consequences, whatever they might be under the charge; the deceased having confessed to the burglary, implicating Clem Gray, and having agreed to turn state's evidence.

6.—Same—Statement of Co-defendant—Properly Received.

The indictment herein, in a separate count having charged appellant also with being an accomplice to the murder of deceased in connection with George McKinley, there was no error when the testimony was offered, in introducing a statement of said Geoge McKinley concerning the killing of deceased. The case later being submitted on the count charging appellant as an accomplice to Clem Gray alone, appellant having then failed to request the withdrawal of the testimony as to George McKinley, no error is shown.

**7.—Same—Requested Charge—Covered by Main Charge—Properly Refused.**

Numerous requested charges which were refused are brought forward for review, and after a careful examination of them all we have reached the conclusion that in every instance where said charges correctly presented the law, they are fully and pertinently covered by the court in his main charge to the jury, and for that reason, in our opinion, there is no merit in any of appellant's complaints at the court's action in refusing the special charges offered.

### ON REHEARING.

**7.—Same—Charge of Court—Objections to—Rule Stated.**

Where objections are directed to the charge of the court as originally prepared, and it appears that the charge was modified to meet such objections, unless there are further objections presented to the charge as modified, the complaint is not available under Art. 658 and 660 C. C. P. 1925.

**8.—Same—Evidence—Held Sufficient.**

On rehearing appellant insists that the evidence is not sufficient to sustain the conviction. There is no question but that appellant was instrumental in causing the deceased to go to a place, at night, to meet Clem Gray. He was then murdered by Gray and others, and every effort made by them to conceal the evidence of the crime. Gray had a motive for removing the deceased. Appellant had the same motive. His defense that he brought about the meeting between deceased and Gray, only that Gray might induce deceased to leave the country, and not testify against Gray and himself, was not accepted by the jury. The evidence in our judgment, although circumstantial, fully supports the verdict. See Hawkins v. State, 270 S. W. 1027, and other cases cited.

Appeal from the District Court of Titus County. Tried below before the Hon. R. T. Wilkinson, Judge.

Appeal from a conviction of being an accomplice to murder, penalty six years in the penitentiary.

This is a companion case to that of Gray v. State, 99 Tex. Crim. Rep. 305, and the facts will be found stated in that case in same detail.

The opinion states the case.

*Myers & Myers, S. F. Caldwell* and *J. A. Ward* of Mount *Pleasant,* for appellant.

*Sam D. Stinson,* State's Attorney, and *Nat Gentry Jr.,* Assistant State's Attorney, for the State.

BERRY, JUDGE.—Appellant was convicted in the district court of Titus County for the offense of an accomplice to murder and his punishment assessed at confinement in the pen-

itentiary for a term of six years.  This is a companion case to that of Gray v. State.

The indictment contains three counts, the first count charges that Otis Ballard was killed by G. C. Gray and that prior to the commission of the offense by said Gray, appellant advised, encouraged and aided the said Gray to commit the offense.  The second count charges that Ballard was killed by Burl Kemp and that the appellant was an accomplice to said murder.  The third charges that Ballard was killed by George McKinley and that appellant was an accomplice to said murder.  The court submitted the case alone on the first count in the indictment, to-wit, on the question as to whether appellant was an accomplice to G. C. Gray, whom said count alleged had killed said Otis Ballard.

The record contains thirty-four bills of exceptions and sixteen special charges.  We do not deem it necessary to discuss each of these matters in detail and must content ourselves by saying that those not fully discussed in this opinion have had our very careful attention.

The first bill complains at the court's action in permitting the father of the deceased to testify to a conversation he had with the appellant about three weeks prior to the time Otis Ballard was killed.  In this conversation, the father of the deceased testified that he asked the appellant if he and Clem Gray had been down to Jefferson to see Otis and the appellant denied that he had been down there, and deceased's father testified that he told appellant that he had a letter from his son stating that they had been down there.  The bill shows that the testimony of the father of the deceased as to the contents of the letter was excluded by the court, and we are satisfied that the balance of the testimony was clearly admissible.

By a second bill of exceptions, appellant complains because the court permitted the witness Burl Kemp to testify against him; the ground of the objection being that the said Kemp had been convicted at a special term of the court in October, 1923, and had consented to take his punishment, and that he was therefore a final convict and that the court at that time, and since the adjournment of the October term, had no authority or power to set aside the judgment of conviction against the said Kemp and that the said Kemp was, therefore, disqualified to testify.  This bill is qualified by the court to the effect that said Kemp had never been sentenced to the penitentiary.  With this qualification, the bill is wholly without merit.  A witness

is not disqualified by reason of his conviction of a felony until sentence has been pronounced upon him and until it has become final by acceptance or by affirmance on appeal. See Section 17 Branch's P. C. for many authorities sustaining this proposition.

Bills 4, 5, 6 and 7 complain at the court's action in permitting the witness Burl Kemp to testify to various things done and said between him and George McKinley and Clem Gray prior to and immediately after Otis Ballard was killed. It was, of course, the burden of the state to show under the indictment in the case that either Clem Gray, Kemp or McKinley killed the said Otis Ballard, and this testimony complained of in these bills was strong and cogent to the effect that the killing was done by Clem Gray. The court properly limited this testimony in his charge by telling the jury that they could consider it only on the question of the guilt of the said Clem Gray. We think the testimony was clearly admissible for this purpose. For the same purpose the testimony of Latson to the effect that he saw Burl Kemp at the home of Clem Gray at about 8:30 o'clock on the night that Ballard was killed, was admissible and appellant's objections thereto are without merit.

By bills 9 and 10, appellant preserves his objections to the testimony of the witnesses Smith and Black to the effect that they examined the ground where the deceased was killed and that they saw blood and hair thereon and saw a trail along which something was dragged. The objection to this testimony is that it is inflammatory and there is no controversy or issue raised on the question of Ballard's being dead and that he came to his death by violence, and that the detailing of the evidence of brutality found by these witnesses could serve no purpose but to inflame the minds of the jury. We cannot agree with appellant's contention in this respect; it was certainly competent and proper for the state to prove the death of the deceased and to introduce any pertinent circumstance showing the manner in which he was killed. This testimony had a very strong tendency to serve this purpose and the admission of it was not error.

By the 11th bill of exception, appellant complains that the court permitted the state to introduce in evidence a part of the voluntary statement made by the appellant to Sam Williams, the County Attorney of Titus County, while the appellant was in jail at Greenville. It seems that the appellant made this voluntary statement at the above time and to the

above-named party and that certain portions of the said statement might have been construed as exculpatory and these exculpatory portions thereof were not offered in evidence by the state but only that part of the statement which was deemed to be inculpatory was offered by the state. The bill of exceptions complaining of this matter is approved by the trial court with the explanation that the defendant had read all the statement, including that omitted by the state to the jury after the state had offered a part of it. With the explanation of the court, no error is shown. The state is not required to offer all of a confession, but may offer such part as it deems proper with the right reserved to the appellant, of course, to offer the balance of the statement, or any part thereof that is explanatory of or connected with the part offered by the state. This was the course pursued in the instant case and no error is manifested by the bill.

The 12th bill of exception complains at the court's action in permitting the state to introduce in evidence a statement signed by the defendant and sworn to before Sam Porter, Justice of the Peace. The objection to this testimony was upon the ground that the appellant was under arrest at the time the statement was made. The bill itself sets out the testimony of the Sheriff of Titus County and in this testimony he swears positively and unequivocally that the appellant was not under arrest at the time the statement was made. Under this state of the record, there is no error shown by this bill.

By bills 13, 14, 15 and 16, appellant objects to the testimony of the witnesses Gaddis, Kelly, Fielder and Poag, as to the search made for the body of the deceased after he was missing and also to the effect that a sack of clothes was found in a slough in a sack containing two big rocks and also to the effect that a place was found where clothes had been burned and a half gallon fruit jar was found laying near them. The witness Burl Kemp, the admitted accomplice in the case, had testified that these clothes were placed in the sack with these rocks and thrown into the slough and he also testified that other clothes were burned by him at the request of Clem Gray after he had poured gasoline from a one-half gallon fruit jar on them and that he had left the fruit jar at the place where the burning occurred. The testimony objected to in these bills of exceptions was clearly admissible for the purpose of corroborating the testimony of the accomplice Burl Kemp. It was also competent to prove by these witnesses that they saw

where something had been dragged from the place where the accomplice testified that deceased was killed to the creek where his body was found. This testimony was a relevant circumstance to corroborate the accomplice Kemp, who had testified that the deceased was killed in the edge of the town of Mt. Pleasant and that his body was carried or dragged to the creek where it was afterwards found. It was also relevant and competent for the state to prove by the witness Murphy that someone came to his house the night the deceased was missing and told him he wanted to get some gasoline. This testimony was offered for the purpose of corroborating the witness Kemp to the effect that Clem Gray sent him to Murphy's house after gasoline to get them back home after they had deposited the deceased's body in the creek on the night he was killed.

Appellant also complains at the court's action in permitting the father of the deceased to testify that his son, the deceased, together with Sam Wilson, and the appellant, were charged with burglarizing Lilienstern & Camack's store, and that the appellant and the witness were talking about this burglary when the witness told appellant that his sons had confessed to said burglary. The court approves this bill with the qualification that during the trial of the case and before the above testimony was offered, the witness, Dr. Ballard, father of the deceased, had testified without objection that he had a conversation with Keith and then told him that his son, Otis Ballard, had confessed to the burglary and this testimony was admitted to show motive. We think the testimony was clearly admissible for the purpose indicated by the trial court. The testimony of Gaddis to the effect that he had heard the father of the deceased tell Clem Gray that the deceased would have to stay here and take the consequences whatever they may be, was admissible for the purpose of showing motive on the part of Clem Gray to kill the deceased, as the matter mentioned concerned a burglary in which Gray and deceased were jointly indicted and to which deceased had confessed.

The appellant objected and reserved a bill of exceptions to the court's action in permitting the state to offer in evidence the voluntary statement of George McKinley, said statement being one concerning the killing of the deceased, Otis Ballard. This bill is qualified by the trial court with the explanation that the evidence was admitted, and so stated at the time, to show the guilt of George McKinley and that the attorneys did not object to it being offered for this purpose and that after the

evidence was closed, the case was submitted on the question of defendant being an accomplice to Clem Gray alone and counsel did not then request the withdrawal of the evidence at that time. In this connection, it is pertinent to remember that the indictment charges appellant in one count with being an accomplice to George McKinley, whom the indictment charges with the murder of the said Ballard, and at the time this testimony was offered, it was pertinent for the state to prove that either McKinley, Gray or Kemp was the actual slayer of deceased, and when the court elected to submit the case alone on the count in the indictment charging Gray with the actual killing, then if the appellant desired to have this testimony withdrawn from the jury, he should have presented his motion to this effect. In addition to this it is also true that the court charged that the evidence submitted before the jury of statements signed by George McKinley was admitted for the jury's consideration in passing on the guilt of Clem Gray and the jury was instructed that they could not consider it for any other purpose except in passing upon the question of the guilt or innocence of Clem Gray. Under this condition of the record no error is shown by the admission of this statement.

Bills of exception 21 and 22 again complain at the court's action in permitting the witness to testify as to the finding of the deceased's body in Cypress Creek. What has already been said with reference to testimony of this character disposes of the contentions made by the appellant with respect to him. This testimony as well as all of the testimony of Burl Kemp as to how the killing actually occurred and as to the details of what was done with the body after the killing occurred was admissible for the purpose of enabling the state to make its case against Clem Gray as the actual slayer of the deceased.

We have carefully examined the various special charges offered by the appellant and have reached the conclusion that in every instance where said charges correctly stated the law, they are fully and pertinently covered by the court in his main charge to the jury. The court gave a correct and full charge on circumstantial evidence and on the question of accomplice and fully advised the jury as to their duty with reference to the statements made by George McKinley and Kemp, and in our opinion there is no merit in any of appellant's complaints at the court's action in refusing the special charges offered.

We have carefully considered the facts in the case, and it is our opinion that they fully warranted the jury in concluding

that the appellant was guilty as an accomplice to Clem Gray in the commission of this atrocious crime, and finding no error in the record, it is our opinion that the judgment should be in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant insists that we were in error in the disposition of the question raised by his first bill of exception. The record shows that Dr. Ballard, the father of the deceased, had the following conversation with appellant about three weeks before Otis Ballard was killed:

"I asked Paul Keith if he had been down to Jefferson to see Otis, him and Clem Gray and he denied that he had been down there and I told him that I had a letter from Otis, stating that he had been down there and he still denied going and I told him that I had a letter right there in my pocket from Otis that stated that Paul Keith had been down there with Clem Gray. In that same conversation Paul Keith asked me if Otis was going to be a witness against him in a burglary case when Lilienstern & Camak's store was burglarized and asked me if Otis had confessed that business and I told him that Otis had confessed and would be a witness in that case for the state and Paul asked me what in the hell did he do that for, and I told him that Otis wanted to come out from all of his troubles and take his punishment and come clear of it all."

The bill of exception sets out a part of this evidence and complains at the reception of the statements by Dr. Ballard as to the contents of the letter he claimed to have received from deceased. It will be observed that it was all a part of the conversation the witness had with appellant. The contents of the letter, nor whether it had in fact been received, was not the inquiry. It was no more than if appellant had been told by witness that his son, said Gray, and appellant had been to see him. The learned trial judge was probably more liberal to appellant than the law demanded when he withdrew from the jury the statement to appellant as to what was in the letter, but having done so we think appellant is in no position to complain.

We think no error is shownn by bills 4, 5, 6 and 7. They relate to the movements and declarations of Gray and McKinley, testified to by Kemp both before and after the killing. As stated in our original opinion, by various counts in the indictment both Gray and McKinley were alleged to have been the principals in the killing, with appellant as an accomplice. All of the testimony objected to was pertinent to show who did the actual killing. Gray's threats against deceased, and all of his acts before the killing having relation to it, and those subsequent were admissible for that purpose, the same as if Gray had been on trial. The court limited the evidence to its legitimate purpose. (See authorities collated under Sec. 725, Branch's Ann. Tex. P. C.)

Appellant insists that the reception of the evidence complained of in bills nine and ten was erroneous and hurtful. Kemp testified to all the incidents occurring subsequent to the homicide about the removal and secretion of the body and clothes, and destruction of other evidence of the crime. This was admissible. It is so held in Gray's case, 99 Tex. Cr. R. 305, S. W.          , and the authorities therein cited. The evidence complained of in the bills mentioned was a recital by other witnesses of what they subsequently discovered indicating that the body of deceased had been removed or dragged and corroborated Kemp upon this point. Kemp was an accomplice. It was incumbent upon the state to substantiate his story by any legitimate testimony at hand. Independent of that the evidence was properly received as is manifest from the opinions in Gray's case, supra, and Simpson v. State, 97 Tex. Cr. R. 57, 263 S. W. 273. Complaint that the evidence was inflammatory and prejudicial is not tenable, if it was otherwise admissible. What is here said also disposes of bills 13, 14, 15, 16, 21 and 22.

We find no merit in the renewed contention that error was committed in permitting the state to introduce a part of appellant's statement made to the county attorney. The parts omitted by the state were put in evidence by appellant. See authorities annotated under Sec. 91, Branch's Ann. Tex. P. C., also Giles v. State, 43 Tex. Cr. R. 561, 67 S. W. 411; Shaw v. State, 73 Tex. Cr. R. 327; Davis v. State, 85 Tex. Cr. R. 15, 209 S. W. 749; Parker v. State, 91 Tex. Cr. R. 68, 238 S. W. 943.

The indictment contained a count charging George McKinley as a principal in the homicide. It was proper to admit Mc-

Kinley's statement upon this issue. After the court had concluded to submit the case only upon the count charging Gray as a principal, before appellant could have just ground of complaint at the admission of McKinley's statement he should have presented a motion to withdraw said statement from consideration of the jury. In discussing this point in our original opinion we adverted to the fact that the court instructed the jury that McKinley's statement was admitted for the jury's consideration in passing upon the guilt of Gray and that they could not consider it for any other purpose. In his motion appellant refers to this charge and urges that it was an erroneous instruction in that no statement of McKinley made subsequent to the homicide was admissible to show the guilt of Gray. Appellant may be correct in this contention. However, we find no exception to the charge in regard to the matter now complained of. From the objections to the charge found in the record we conclude that the court must have originally prepared it upon the theory that if either Gray, Kemp or McKinley were principals and that appellant was an accomplice as to either of them he would be guilty. If our conclusion is correct the charge was modified in response to objections as it submits only the theory that Gray was a principal in the killing. Of course, the charge as originally prepared is not before us, but we quote from the objection to it what purports to be a copy of the paragraph of the charge then before counsel:

"For the purpose of showing the guilt of Clem Gray, Burl Kemp and George McKinley the state has offered evidence for the purpose of showing their guilt, and you are nistructed that you can not consider such evidence in passing upon the guilt of defendant as an accomplice. You may consider the same in determining whether or not Clem Gray, Burl Kemp and George McKinley are guilty of the murder of Otis Ballard, as alleged in the bill of indictment herein."

Objection to this was urged upon the claim that it was upon the weight of the evidence. There is not now in the charge any such instruction as indicated by the objection quoted. If objections were made to the charge after its modification the record fails to show it. Therefore, the complaint now urged is not available under Arts. 658 and 660, C. C. P. 1925.

Appellant makes general complaint in his motion that the charge authorized the statement of McKinley, an accomplice, to be appropriated by the jury for the purpose of corroborating Kemp, another accomplice. We have not discovered in the

charge anything which could be so construed. In one paragraph the jury was instructed that:

"The evidence, statements or declarations of one accomplice can not be considered as corroboration of another accomplice. And the statements or declarations of an accomplice, made outside of court, can not be considered by you in corroboration of his testimony in court."

Another paragraph is:

"You are instructed that you can not consider any statement made by any person out of the presence of the defendant Paul Keith, if you find any such statements were made, unless you believe from the evidence beyond a reasonable doubt that there was an agreement and conspiracy made between the defendant and the said parties before the offense, if any, was committed by the said Clem Gray to kill Otis Ballard."

In another paragraph the jury were specifically told that, although they might believe Gray intended to kill Ballard, yet if the purpose of appellant in bringing about a meeting between them was to secure the absence of Ballard as a witness in a case then pending against Gray but without knowledge of appellant of Gray's intention to kill Ballard, appellant would be entitled to an acquittal, the charge thus appearing to protect appellant's rights under the issues raised.

The contention is again urged that the judgment should not stand because it is claimed the evidence was insufficient to authorize a finding that appellant knew of the unlawful purpose of Gray to kill deceased. The facts will be found stated in some detail in Gray v. State, 99 Tex. Cr. R. 305, and in McKinley's case, this day decided on rehearing. We have again carefully reviewed the evidence with this point in mind. The statements of Gray, McKinley and appellant raise the issue that the efforts of McKinley and appellant to bring about a meeting between Gray and deceased was only for the purpose of giving Gray an opportunity to induce deceased to leave the country, thereby preventing him from being a witness. We are not prepared to say the jury should have accepted this theory as true. Appellant himself was interested in getting deceased out of the way to prevent his testimony in a charge of burglary then pending against appellant. The evidence is clear that both appellant and Gray knew that deceased had confessed and was expected to testify for the state in the cases against each of them; that they resented the fact that he had turned state's evidence and had refused to leave the country;

that they also knew of his father's efforts to prevent deceased from leaving.   Appellant and McKinley were both instrumental in bringing about a meeting between Gray and deceased at the school house on the night of the homicide.   Their actions prevented other parties from knowing this.   They reported to the officers and others after the homicide that deceased had been left at the school house talking to a woman, when in fact they knew he had been left there with Gray.   Appellant expressed little surprise or concern at the discoveries next morning which indicated a murder had been committed.   All of these matters were for the consideration of the jury.   We think it beyond our province to say they were unauthorized in concluding that appellant was aware of the unlawful purpose of Gray to take deceased's life.   They were not bound to accept the statements of appellant or other interested parties upon this issue.   Hawkins v. State, 270 S. W. 1025; Key v. State, 270 S. W. 1027; Horak v. State, 273 S. W. 601.   The truth of their testimony was a question for the determination of the jury under all the facts and circumstances in evidence.

The motion for rehearing is overruled.

*Overruled.*

Presiding Judge Morrow notes his dissent, being of opinion that the evidence is insufficient.   His views are expressed in the opinion written by him in McKinley's case.

HAWKINS, Judge.